**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MARK IAN GAVER,                                    *

    Petitioner,                                  *

    v.                                                *     **Civ. Action No.   RDB-21-0981**
                                                          **Crim. Action No. RDB-17-0640**

UNITED STATES OF AMERICA,              *

    Respondent.                               *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**<u>MEMORANDUM OPINION</u>**

Following an eight-day jury trial in this Court, *pro se* Petitioner Mark Ian Gaver ("Gaver" or "Petitioner") was convicted on eight counts of bank fraud in violation of 18 U.S.C. § 1344 and two counts of money laundering in violation of 18 U.S.C. § 1957. (Judgment, ECF No. 106.)  On December 13, 2018, this Court sentenced Petitioner to a total term of 204 months of imprisonment followed by a three-year period of supervised release, and ordered restitution in the amount of $49.215 million and a special assessment of $10,000. (*Id.*)  On May 28, 2020, Petitioner's conviction and sentence were affirmed by the United States Court of Appeals for the Fourth Circuit.  *United States v. Gaver*, 815 Fed. App'x 700 (4th Cir. May 28, 2020).

Currently pending before this Court is Petitioner's *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  (ECF No. 161.)  Also pending is the following series of Motions: Petitioner's Revised Motions to Appoint Counsel (ECF Nos. 165, 167); Petitioner's Motion for Release of Petitioner's Attorney Visit and Telephone Records

from the Chesapeake Detention Facility (ECF No. 178); Petitioner's Motion for Release of Petitioner's Trial Attorney Travel and Cellular Telephone Records (ECF No. 179); and Petitioner's Motion for Release of Government Documents Obtained in the Interrogation of Petitioner's Former Trial Attorneys (ECF No. 180).

The Government has opposed Gaver's Motions.  (ECF Nos. 170, 181.)  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 161) is DENIED; Petitioner's Revised Motions to Appoint Counsel (ECF Nos. 165, 167) are DENIED; Petitioner's Motion for Release of Petitioner's Attorney Visit and Telephone Records from the Chesapeake Detention Facility (ECF No. 178) is DENIED; Petitioner's Motion for Release of Petitioner's Trial Attorney Travel and Cellular Telephone Records (ECF No. 179) is DENIED; and Petitioner's Motion for Release of Government Documents Obtained in the Interrogation of Petitioner's Former Trial Attorneys (ECF No. 180) is DENIED.

## BACKGROUND

On December 5, 2017, Mark Ian Gaver was charged in an Indictment with eight counts of bank fraud, in violation of 18 U.S.C. § 1344 (Counts 1 through 8), and two counts of money laundering, in violation of 18 U.S.C. § 1957 (Counts 9 and 10).  (Indictment, ECF No. 1.)

The following is a summary of the facts proven at trial, as provided in Petitioner's Amended Presentence Investigation Report.  (Am. Presentence Investigation Rep. ¶¶ 5-28, ECF No. 109.)  During a period of approximately 15 years, Gaver created and executed a bank fraud scheme to deceive as many as six different banks—Bank of America, Maryland National

Bank, Way Point Bank, Sovereign, Graystone, and Santander—which had extended lines of credit based upon reported accounts receivables of Gaver's information technology services company, GTI Federal ("GTI").   In 2016, Gaver's long-running fraud scheme began to unravel when a Florida court awarded possession of GTI to his ex-wife in connection with their divorce.   When Gaver's ex-wife and her attorney gained control of GTI and its actual books and records, Gaver's scheme was exposed and a legal investigation ensued.   In 2017, prosecutors presented the matter to a grand jury, which returned an Indictment on December 5, 2017.   At trial, Gaver was represented by attorneys James J. Zonas and Alan F. Hamisch of Naples, Florida.   Sentencing counsel was attorney Steven H. Levin of Baltimore, Maryland.

On August 1, 2018, after an eight-day jury trial, Gaver was found guilty by a jury on all counts.   (Jury Verdict, ECF No. 58.)   On December 13, 2018, this Court sentenced Petitioner to a total term of 204 months of imprisonment followed by a three-year period of supervised release, and ordered restitution in the amount of $49.215 million and a special assessment of $10,000.   (Judgment, ECF No. 106.)   Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Fourth Circuit, and on May 28, 2020, the Fourth Circuit affirmed his conviction and sentence.   *United States v. Gaver*, 815 Fed. App'x 700 (4th Cir. May 28, 2020).

On April 21, 2021, Gaver filed the presently pending Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.   (ECF No. 161.)   On April 23, 2021, this Court denied without prejudice Petitioner's request for appointment of counsel to assist him with his § 2255 Motion, having not yet determined if Petitioner's Motion merited an evidentiary hearing.   (ECF No. 162.)   On May 3, 2021, this Court granted the Government's request to

require Petitioner's prior counsel to respond to the Government's inquiries relating to allegations of ineffective assistance of counsel advanced in Petitioner's § 2255 Motion.  (ECF No. 164.)  Petitioner filed Revised Motions to Appoint Counsel on May 25, 2021 and June 16, 2021.  (ECF Nos. 165, 167.)  The Government has responded to Petitioner's § 2255 Motion. (ECF No. 170.)   Petitioner has filed a reply to the Government's submission and two supplements to his § 2255 Motion.  (ECF Nos. 182, 183, 185.)

## STANDARD OF REVIEW

This Court recognizes that the Petitioner is *pro se* and has accorded his pleadings liberal construction.  *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007).  Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside, or correct his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to a collateral attack.  *Hill v. United States*, 368 U.S. 424, 426–27, 82 S. Ct. 468 (1962) (citing 28 U.S.C. § 2255).  "If the court finds . . . that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

The scope of a § 2255 collateral attack is far narrower than an appeal, and a "'collateral challenge may not do service for an appeal.'"  *Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016)

(quoting *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584 (1982)).  Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion unless the petitioner can demonstrate cause and prejudice, or actual innocence.  *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010); *see Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339 (1994); *see also United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999).  Conversely, any "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."  *Massaro v. United States*, 538 U.S. 500, 509 (2003).

## ANALYSIS

Gaver raises ten ineffective assistance of counsel arguments in his § 2255 Motion to Vacate.  He has also filed a series of additional motions: Revised Motions to Appoint Counsel (ECF Nos. 165, 167); Motion for Release of Petitioner's Attorney Visit and Telephone Records from the Chesapeake Detention Facility (ECF No. 178); Motion for Release of Petitioner's Trial Attorney Travel and Cellular Telephone Records (ECF No. 179); and Motion for Release of Government Documents Obtained in the Interrogation of Petitioner's Former Trial Attorneys (ECF No. 180).

As a preliminary matter, this Court notes that there is no Sixth Amendment right to counsel in collateral proceedings.  *See Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987).  A court may appoint counsel to a *pro se* litigant seeking Section 2255 relief if the court determines "that the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B). Additionally, Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that a court must appoint counsel only "[i]f an evidentiary hearing is required."  *See* Rule 8(c) of

the Rules Governing Section 2255 Proceedings. As Petitioner has adequately presented his claims and grounds for relief, there is no reason to appoint counsel. The interests of justice do not require appointment of counsel, and no evidentiary hearing is necessary in this matter. Accordingly, Petitioner's Revised Motions to Appoint Counsel (ECF Nos. 165, 167) are DENIED.

## I.     Petitioner's Motions for Discovery (ECF Nos. 178, 179, 180)

Gaver has also filed a series of Motions in which he seeks discovery from the United States Marshals Service and the Government. Specifically, Gaver seeks records of visits by his trial counsel while he was detained at the Chesapeake Detention Facility ("CDF") between December 2017 and January 2019 (ECF No. 178); records relating to telephone calls with his counsel over the same period (ECF No. 179); and records "gathered during interactions between Government Prosecutors and the Petitioner's former trail [sic] attorneys" (ECF No. 180).

A habeas petitioner is not entitled to discovery as a matter of course. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, discovery requests in habeas proceedings are governed by Rule 6 of the Rules Governing § 2255 Proceedings. A petitioner may engage in discovery only with leave of the court, after good cause is shown. *See* Rules Governing § 2255 Cases, Rule 6(a), 28 U.S.C. folio § 2255 (2013). "Good cause" for discovery exists when a petitioner establishes a prima facie case for relief. *See Harris v. Nelson*, 394 U.S. 286, 290 (1969). Discovery is warranted "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09 (quoting *Harris*, 394 U.S. at 300).

Under this standard, a request for discovery must rely on specific factual allegations. *See Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998) (citing *Harris*, 394 U.S. at 300). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)); *see also Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007) (observing that "[a] habeas proceeding is not a fishing expedition"). Further, good cause is not shown where a defendant bases a discovery request on a claim that fails as a matter of law. *See Thomas v. Taylor*, 170 F.3d 466, 474 (4th Cir. 1999) (finding that trial court did not abuse its discretion in denying discovery request related to claim that failed as a matter of law).

Here, Petitioner has not set forth sufficient factual allegations to show good cause to warrant discovery on any of the ten claims he advanced in his § 2255 Motion. Moreover, in an effort to accommodate Gaver as a *pro se* litigant, the Government contacted Gaver's trial counsel to locate any records they may have relating to their calls to Gaver or of their travels to see him while at CDF. The Government provided those records on August 3, 2021 before Gaver filed his Reply on August 17, 2021. (ECF No. 181-1.) Accordingly, Petitioner's Motion for Release of Petitioner's Attorney Visit and Telephone Records from the Chesapeake Detention Facility (ECF No. 178); Motion for Release of Petitioner's Trial Attorney Travel and Cellular Telephone Records (ECF No. 179); and Motion for Release of Government Documents Obtained in the Interrogation of Petitioner's Former Trial Attorneys (ECF No. 180) are DENIED.

## II.   Ineffective Assistance of Counsel

A freestanding claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). To state a claim for relief based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671, 104 S. Ct. 2052 (1984).

The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Id.* at 688. In making this determination, courts apply a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688–89. To satisfy the first prong, the Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound . . . strategy.'" *Id.* at 689. Specifically, a Petitioner must identify "the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The second, or "prejudice" prong, requires that a petitioner demonstrate that his counsel's errors "had an adverse effect on the defense." *Id.* at 693. In the plea-bargaining context, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366 (1985).

In applying the *Strickland* test, the United States Court of Appeals for the Fourth Circuit has noted that there is no reason to address both prongs if the defendant makes "'an insufficient showing on one.'" *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of

based solely on a deficiency in satisfying either the "performance" prong or the "prejudice" prong. *See Strickland*, 466 U.S. at 697.

Gaver proffers ten grounds for his ineffective assistance of counsel argument: (1) trial counsel failed to notify the Court that Gaver was "in physical distress caused by his incarceration at the Chesapeake Detention Facility"; (2) trial counsel was not licensed to practice law in the State of Maryland; (3) trial counsel failed to investigate and to allow Gaver to have knowledge of evidentiary discovery; (4) trial counsel failed to investigate prosecution evidence; (5) trial counsel failed to evaluate, inform, or discuss two pre-trial plea offers with Gaver that were proffered by Government; (6) trial counsel failed to investigate prosecution witnesses; (7) trial counsel failed to impeach prosecution witnesses; (8) trial counsel failed to call, secure, or subpoena defense witnesses or to submit defense evidence as recommended by Gaver; (9) trial counsel failed to pursue issue of prosecutorial misconduct and criminal obstruction of justice; and (10) sentencing counsel failed to request a continuance for the sentencing phase despite Gaver's request to do so.

## A. Petitioner's Medical Conditions (Ground One)

Petitioner claims that trial counsel was ineffective for allowing "the trial proceeding to begin without notifying the court that Petitioner was in physical distress caused by his incarceration" at CDF. (ECF No. 161 at 7.) Petitioner asserts that medical personnel at CDF forced him to consume thirteen medicines per day which caused him serious side effects that affected his "ability to contribute to his own defense," including "uncontrollable tremors" that "diminished the way he was viewed by the jury." (ECF No. 161 at 9.) Petitioner faults trial counsel for failing to inquire as to his overall health and fitness "to withstand the rigors of

what was to be a ten-day trial." *Id.* He asserts that his condition should have prompted defense counsel to ask the Court for a medical evaluation and that counsel's failure to do so "allowed a physically and mental impaired defendant to face an eight-day trial, thus resulting the movant to be prejudiced in this case." (ECF No. 161 at 10.)

On this record, Petitioner is unable to show that counsel's performance fell short of the objective reasonableness standard and he is unable to show prejudice. As Judge Garbis of this Court noted in a similar case,

> Petitioner presents a litany of injuries and medical problems prior to trial. However, he does not present evidence—as distinct from his own opinion— that these matters did, in fact, render him unable to assist counsel at trial. Nor does he suggest—with the 20–20 hindsight now available—what could have been done at trial that would have created a reasonable probability of a 'not guilty' verdict.

*Ashley v. United States*, No. CIV.A. MJG-11-3041, 2012 WL 1957835, at *2 (D. Md. May 30, 2012). Indeed, the record reflects no such medical conditions that would have rendered Petitioner unable to assist counsel at trial and of which counsel should have informed the Court. (ECF Nos. 173, 174 *SEALED*.) In any event, Petitioner has also not shown that his tremors and medical ailments prejudiced him before the jury to a degree that but for their existence, the result at trial would have been different. Accordingly, Petitioner's claim fails.

### B. Trial Counsel's *Pro Hac Vice* Admission (Ground Two)

In his reply, Petitioner concedes that both Mr. Hamisch and Mr. Zonas were properly admitted *pro hac vice* to represent him in his criminal case before this Court. (ECF No. 182 at 3-4.) Accordingly, the claim is moot.

### C. Petitioner's Access to Evidence (Ground Three)

Petitioner next claims ineffective assistance of counsel on the basis that his trial counsel failed to investigate the facts of the case, failed to communicate the facts adequately to Petitioner, and failed to allow Petitioner access to the discovery provided by the Government. (ECF No. 161 at 16-18.)

Again, Petitioner's claims are governed by the two-pronged test articulated in *Strickland*. As the United States Court of Appeals for the Fourth Circuit has noted, "[i]t is well-established that an individual claiming ineffective assistance of counsel must show, first, that counsel's performance was deficient, in that it 'fell below an objective standard of reasonableness.' Once counsel conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable.' Tactical or reasonable professional judgments are not deficient but a failure to investigate a material matter due to inattention may be deficient." *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (citing *Strickland*, 466 U.S. at 688).

The record does not support Petitioner's contention that counsel failed to investigate his life or the circumstances that led him to face criminal charges before this Court or that counsel's investigation was objectively unreasonable. Mr. Hamisch had in fact represented Petitioner in divorce proceedings between him and his former wife, including during a full trial in October 2017. (Hamisch Letter at 1; ECF No. 170-1.) Petitioner's criminal conduct only came to light once Petitioner's former wife and her counsel discovered that GTI was worth far less than Petitioner had represented. (*Id.*) Mr. Hamisch's representation of Petitioner during the divorce and subsequent civil proceedings provided a significant source of information about Petitioner's life and the nature of the conduct at issue in the criminal case.

It appears from the record that Petitioner retained Mr. Hamisch precisely because he was so familiar with the underlying facts of the case.

Petitioner's claim regarding insufficient communication with counsel is also not supported by the record.  Mr. Zonas stated in his affidavit that he found it difficult to get Petitioner to engage with him to discuss the Government's evidence relating to Grant Thornton.  (Zonas Aff. at ¶ 3; ECF No. 170-1.)  Mr. Zonas further implied that Petitioner was more focused on requesting that his former wife testify "for general harassment purposes" than on confronting the Government's documentary evidence. (Zonas Aff. at ¶ 4; ECF No. 170-1.)  Finally, Mr. Zonas remarked that as trial got closer, Petitioner "had no desire to see" his counsel more.  (Zonas Aff. at ¶ 9; ECF No. 170-1.)  The record does not reflect that counsel's degree of communication with Petitioner rendered their performance objectively unreasonable.

Likewise, Petitioner cannot show that the degree of counsel's communication with him prejudiced him at trial.  Firstly, Petitioner himself chose to retain counsel who resided and practiced in Florida to represent him at his federal criminal trial in Maryland.  Secondly, as the late Judge Titus of this Court noted in a case where counsel's trial schedule resulted in a period of several months with no communication at all between an attorney and his criminal defendant client, "[w]hile he may have been frustrated by the lack of communication during this time, [Petitioner] has failed to demonstrate how additional meetings with his attorney would have led to a different outcome, and thus has failed to make out an ineffective assistance of counsel claim merely because of this brief lack of communication." *Hickson v. United States*,

No. CIV.A. RWT-13-2790, 2014 WL 6609307, at *6 (D. Md. Nov. 18, 2014) (citing *Lenz v. Washington*, 444 F.3d 295, 303 (4th Cir.2006)."

Furthermore, the record does not show that counsel's performance was deficient in entering into the discovery agreement with the Government.  In *United States v. Galloway*, 749 F.3d 238, 242 (4th Cir. 2014), the United States Court of Appeals for the Fourth Circuit upheld the decision of this Court not to allow a pretrial detainee to possess discovery materials in a detention center.  The record reflects that the discovery agreement in this case provided that defense counsel would not give material to Petitioner absent approval from the Government, but that counsel could of course "review this material with the client at any time or place." (ECF No. 170-4.).  Petitioner makes no note of any contemporaneous complaint he made during the pretrial and trial process about his access to discovery.  Moreover, much of the Government's strongest evidence against Petitioner consisted of financial documents that Petitioner himself had created and submitted to Santander Bank, further undermining his claim that his inability to possess discovery material at CDF prejudiced him at trial.  In fact, shortly before trial, the Government provided the defense with all of its exhibits in large notebooks, all of which were available to the Petitioner at defense table throughout the entire trial.  July 23, 2018 Tr. at 35.

Because Petitioner cannot show that counsel's performance in investigating the facts of the case, communicating with Petitioner, and allowing Petitioner access to the Government's evidence was objectively unreasonable, his claim fails.  His claim also fails because he has not demonstrated prejudice at trial by any of counsel's actions about which he complains.

### D. Trial Counsel's Evaluation, Investigation, and Impeachment of Government's Evidence (Grounds Four, Six, and Seven)

Petitioner argues that he received ineffective assistance of counsel because counsel "failed to conduct even the most basic investigation" of any prosecution evidence, "failed to properly investigate prosecution witnesses," and failed to impeach prosecution witnesses. (ECF No. 161 at 20, 29, 31). These claims are also without merit.

The Supreme Court cautioned in *Strickland* that "it is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." 466 U.S. at 690. Given this temptation, the Fourth Circuit has advised against engaging in "a grading of the quality of counsel's cross-examination." *Hunt v. Nuth*, 57 F.3d 1327, 1333 (4th Cir. 1995)

The record reflects that counsel did in fact investigate underlying facts of the case. Mr. Hamisch represented Petitioner in his divorce proceedings, which resulted in Petitioner's former wife and her counsel discovering that Petitioner's representations about his business to his lender were largely false and that the company was worth relatively little. Thus, Petitioner knew the answer to each of the questions about the genesis of the evidence presented against him at trial which he claims his counsel were ineffective for not asking of the Government. (ECF No. 161 at 20-21.) Likewise, the record shows that that Petitioner's attorneys were knowledgeable about the facts of the case and did engage in rigorous cross-examination of the Government's witnesses. For example, Mr. Zonas cross-examined Jeffrey Arendt, the former Chief Administrative Officer of GTI, about a range of subjects from checks he wrote during the final days of GTI's operations to the company's dealings with Grant Thornton. (July 24, 2018 Tr. at 44-116, 128-29.)

Petitioner does not demonstrate that counsel's performance fell below an objective standard of reasonableness. Rather, he simply contests counsel's strategic decisions at trial. A review of the trial record reveals that counsel subjected Government witnesses to rigorous cross-examination. Petitioner cannot simply provide a list of questions counsel did not ask during cross-examination to show ineffective assistance of counsel. The scope of the questions posed during cross-examination falls directly within counsel's discretion to form a strategy for trial. This Court will not "grad[e]" counsel's performance, as Petitioner's disagreement with counsel's questions does not amount to deficient performance under *Strickland.*

### E.  Government's Two Pre-Trial Plea Offers (Ground Five)

Next, Petitioner claims ineffective assistance of counsel on the grounds that trial counsel "failed to evaluate, inform, or discuss two pretrial Plea Agreements with the movant that were proffered by government prosecutors." (ECF No. 161 at 25.)

It is well settled that the Sixth Amendment right to counsel applies at the critical stage of plea bargaining. See, e.g., *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). "Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland." *See Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citing *Hill*, 474 U.S. at 57). The Supreme Court has held that defense counsel has a duty to communicate to the defendant formal plea offers from the Government. *Id.* at 145. Where a plea offer has lapsed or been rejected because of counsel's deficient performance, a *Strickland* ineffective assistance claim may lie if the defendant makes three showings. *Id.* at 147. First, a defendant "must demonstrate a reasonable probability [he] would have accepted

the earlier plea offer had [he] been afforded effective assistance of counsel.  *Id.*  Second, the defendant "must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."  *Id.*  Finally, to prove prejudice, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  *Id.*  (citing *Glover v. United States*, 531 U.S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance.")).

Petitioner asserts that on the July 23, 2018, the first day of trial, he picked up a legal document on counsel table and inquired of Mr. Zonas as to what the document was. Petitioner states that Mr. Zonas "intimated that it was a plea offer from the government." (ECF No. 161 at 26).  Petitioner claims he saw that the letter was dated January 28, 2018, but that the plea offer had not been disclosed to him until the first day of trial.  The record, however, shows that on the first morning of trial before the venire was brought in to the courtroom, this Court proceeded to verify on the record what plea offers, if any, the Government had made to the defendant, "and presumably his rejection of them so it's clear on the record."  (July 23, 2018 Trial Tr. at 21, ECF No. 114.)  Government counsel explained the terms of the first plea offer on the record and confirmed that defense counsel informed that Petitioner had rejected the offer.  Government counsel also explained that in the Spring of 2018, defense counsel inquired about the possibility of a substantial assistance reduction pursuant to U.S.S.G. § 5K1.1 if Petitioner had information that another person engaged in criminal activity in connection with his scheme.  Government counsel agreed to meet with

16

Petitioner, and counsel came to Maryland from Florida to attend the proffer.  When the day came, Government Counsel explained, Petitioner refused to leave his cell and the meeting was never rescheduled.  (*Id.* at 27.)

This Court then confirmed with defense counsel that the Government had correctly summarized the terms of the plea offers, and defense counsel so indicated on the record that Petitioner rejected the offer because he maintained his innocence.  (*Id.* at 23-24.)  When Petitioner disputed that the plea offer had ever been communicated to him and asserted that he had only become aware of the offers that morning, this Court asked that a copy of the Government's February 9. 2018 plea letter be produced and put into the record as Court Exhibit 1.  (*Id.* at 25, 29.)  Upon further questioning by this Court on the record, Petitioner acknowledged that he was aware that the Government had made a plea offer and that he rejected that offer and chose to proceed to trial.  (*Id.* at 26.)  This Court itself further summarized the terms of the written plea offer on the record and confirmed that Petitioner was aware of the terms of that offer as of that moment and that he still intended to reject it. Petitioner stated that it was in fact his intent to reject the offer as this Court summarized it for the record.  (*Id.* at 29-33.)  Having confirmed that the substance of the plea offer had been communicated to Petitioner and that Petitioner was rejecting the offer, this Court proceeded to jury selection.

The record does not reflect that counsel failed to communicate the substance of plea offers to Petitioner.  Firstly, when questioned by this Court, Petitioner conceded that he was generally aware that the Government had made a plea offer and that he rejected it.  Petitioner further specifically rejected the terms of the plea agreement in the Government's letter of

February 2018 as summarized by this Court.  Moreover, Mr. Zonas stated in his affidavit that Petitioner at all times maintained his innocence, rejected any plea negotiations and requested a jury trial.  (Zonas Aff. at ¶ 2; ECF No. 170-1.)  Accordingly, the record does not show that counsel failed to communicate plea offers to Petitioner.  On the contrary, it shows that Petitioner rejected any plea offer and insisted on his right to a trial by a jury.  Accordingly, Petitioner's claim fails.

### F.  Trial Counsel's Decision Not to Call Defense Witnesses (Ground Eight)

Petitioner makes a further claim of ineffective assistance of counsel on the grounds that trial counsel failed to call any witnesses.  Specifically, he claims trial counsel was ineffective for failing to call David C. Weaver, an attorney in Frederick, Maryland, Dr. Theodore R. Schlossnagle, a cybersecurity expert, and his former wife, Donna Gaver.  (ECF No. 161 at 35.) This claim also fails.

Defense counsel has "wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions ... is particularly important because of the broad range of legitimate defense strategy" available. *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003); *see also Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994).  Decisions about whether to call witnesses are within the tactical discretion of counsel.  *Fuertes v. United States*, No. CR RDB-10-0770, 2017 WL 2461931, at *3 (D. Md. June 7, 2017).

The record demonstrates that defense counsel's decision not to call witnesses was a tactical decision within "the broad range of legitimate defense strategy"—not the product of neglect or inadequate representation.  Defense counsel did file a witness list (ECF No. 34) in advance of trial to alert the Government and this Court of potential witnesses, but ultimately

chose not to call any witnesses and instead to confront the Government's case through cross-examination and argument.   Petitioner has made no showing that there is a reasonable probability that but for defense counsel's failure to call these witnesses the result at trial would have been different.   In fact, Counsel repeatedly explained to Petitioner that calling his former wife to the stand for harassment purposes would be *detrimental* to his case as she was the one who discovered the fraud at issue when she received control of GTI during the divorce proceedings.   (Zonas Aff. at ¶ 4-5; ECF no. 170-1.)

Petitioner has neither made a showing that counsel failed to perform in an objectively reasonable manner by not calling witnesses at trial, nor has he shown prejudice from counsel's tactical decision not to call witnesses. Accordingly, this claim fails.

### G.  Testimony of Federal Agent at Trial (Ground Nine)

Petitioner next claims ineffective assistance of counsel on the grounds that trial counsel failed to pursue a claim of prosecutorial misconduct relating to the testimony of Special Agent Kelly Burlingame of the Federal Housing Finance Agency.  This claim fails because Petitioner has failed to meet the prejudice prong of *Strickland*.

The testimony at issue related to a FineMark bank account opened by Petitioner on March 31, 2016, the day after he was deposed by his former wife's counsel during the divorce litigation in Florida.  At trial, Special Agent Burlingame testified that Petitioner stated to her upon his arrest on November 15, 2017 that his only financial asset was one bank account with Bank of America with a balance of approximately $120.  She then testified that Petitioner was not truthful in his answer to her because "we had knowledge of a FineMark National Bank account in the name of Pelican Colony Partnership, LLC with a bank account balance of

approximately 2.5 million dollars." (July 27, 2018 Tr. at 194, 197, ECF No. 119; ECF No. 170 at 45.)  On cross-examination, Mr. Zonas asked agent Burlingame whether she had any independent knowledge that any of Petitioner's accounts had been frozen at some point prior to his arrest during his divorce proceedings.  She responded that she did not.  (July 27, 2018 Tr. at 198, ECF No. 119; ECF No. 170 at 45.)  The testimony of the Government's last witness, FBI financial analyst David Rutledge, revealed the background of the FineMark account.  On cross-examination, Mr. Zonas elicited from analyst Rutledge that the account was frozen "either sometime in December 2016 or January 2017," well before Petitioner's arrest.  (July 30, 2018 Tr. at 128, ECF No. 120; ECF No. 170 at 46.)  Petitioner claims that Special Agent Burlingame "intentionally lied under oath" because at the time she spoke to Petitioner upon his arrest, the "FineMark Bank account belonged to no one else but Ms. Donna Gaver." (ECF No. 161 at 40-41.)  The Government contends that as of the date of his arrest in mid-November 2017, Petitioner still maintained an ownership interest in the FineMark account since the account had not yet been fully transferred to his former wife because of the freeze order in effect in Santander's civil action.  As such, the Government argues, Special Agent Burlingame's testimony regarding Petitioner's statement was actually truthful.

Regardless of the nature of Petitioner's ownership interest in the account at the time of this arrest and of Special Agent Burlingame's state of mind when she testified, Petitioner's claim fails because he cannot demonstrate that counsel's failure to pursue the alleged prosecutorial misconduct prejudiced him at trial.  In fact, defense counsel effectively cross-examined both Special Agent Burlingame and analyst Rutledge to support the argument that

Petitioner believed he did not have ownership of the account at the time he made the statement. The Government ultimately did not even argue Petitioner's allegedly false statement in closing. Petitioner has not demonstrated how the result of his trial would have been different if his counsel had taken some other action regarding the alleged prosecutorial misconduct. Accordingly, the claim fails.

### H. Sentencing Counsel's Failure to Request a Continuance (Ground Ten)

Finally, Petitioner claims he was denied the effective assistance of counsel because his sentencing counsel failed to seek a continuance of the December 13, 2018 sentencing hearing despite the fact that sentencing counsel was not appointed to represent Petitioner until December 5, 2018. Petitioner's allegations are squarely contradicted by the record. The claim is meritless.

Petitioner bears the burden of overcoming the presumption that counsel's decision not to seek a continuance may be considered an appropriate and necessary strategy under the circumstances. *See, e.g.*, *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir.1995); *United States v. Myers*, No. CR 6:06-1275-HMH, 2009 WL 1014335, at *2 (D.S.C. Apr. 14, 2009).

Petitioner claims that trial counsel "terminated all communication with him shortly after the judgement of conviction was rendered on August 1, 2018" and that "on October 25, 2018 the trial attorneys request to withdraw as counsel to the movant was accepted by this court." (ECF No. 161 at 44.) In fact, Petitioner himself reported to this Court in a letter dated September 3, 2018 that he had terminated the services of his trial counsel "out of respect for their time and law practices, since I do not have the money to pay them." (ECF No. 64 at 1.) Counsel filed their own motion to withdraw on September 28, 2018. (ECF No. 70.) On

October 3, 2018, Magistrate Judge Copperthite held an attorney inquiry hearing with Petitioner and his trial counsel present and granted counsel's motion to withdraw.  (ECF No. 74.) Subsequently, both Assistant Federal Public Defender Laura Abelson and Thomas Barnard, a former Assistant United States Attorney, now in private practice, were each briefly appointed to represent Petitioner before they withdrew.  (ECF Nos. 76, 78, 88, 90, 92.)

While it is true that no formal appearance was noted until December 5, 2018, Attorney Steven Levin, also a former Assistant United States Attorney, has provided an affidavit supported by exhibits stating that he accepted the appointment to represent Petitioner on October 25, 2018, the day Mr. Barnard moved to withdraw his appearance.  (Levin Aff. at ¶ 2, Ex. A, Ex. B; ECF No. 170-7.)  The record reflects that in November 2018 Petitioner sent Mr. Levin several letters that included references to their earlier meetings, indicating that some face-to-face encounters had already taken place at the time the letters were written.  (Levin Aff. at ¶ 7, Ex. C; ECF No. 170-7.)  Mr. Levin stated in his affidavit that at his first meeting with Petitioner on October 29, 2018, he informed Petitioner that this Court was willing to move his sentencing date to February 2019.  Mr. Levin stated that Petitioner insisted that he wanted to "move forward with sentencing as soon as possible" in order to leave the Chesapeake Detention Facility.  (Levin Aff. at ¶ 9, Ex. F; ECF No. 170-7.)  Mr. Levin also contradicted Petitioner's claims about his representation.  For example, Petitioner claims that Mr. Levin prevented him from reviewing the Presentence Investigation Report, yet Mr. Levin has attached to his affidavit a page of the report with the handwritten comments of Petitioner on it.  (Levin Aff. at Ex. C.)  In sum, there is no support in the record for Mr. Gaver's claims against Mr. Levin.

Petitioner's claim fails because he has not met his burden to show that Mr. Levin's performance was objectively unreasonable. The record shows that Mr. Levin promptly accepted the appointment to represent Petitioner at sentencing, met with Petitioner immediately, and informed Petitioner that the Court would postpone the sentencing. The record also shows that Petitioner chose to move forward in December and had adequate communication with counsel in advance of the hearing, during which he reviewed the Presentence Investigation Report and commented on it in writing. Accordingly, Petitioner's claim fails.

In sum, Gaver's claims of ineffective assistance of counsel cannot overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *See Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689)). As a result, Gaver's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 161) is DENIED.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 161) is DENIED; Petitioner's Revised Motions to Appoint Counsel (ECF Nos. 165, 167) are DENIED; Petitioner's Motion for Release of Petitioner's Attorney Visit and Telephone Records from the Chesapeake Detention Facility (ECF No. 178) is DENIED; Petitioner's Motion for Release of Petitioner's Trial Attorney Travel and Cellular Telephone Records (ECF No. 179) is DENIED; and Petitioner's Motion for Release of Government Documents Obtained in the Interrogation of Petitioner's Former Trial Attorneys (ECF No. 180) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order.  *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003).  Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: October 1, 2021

_____/s/_____
Richard D. Bennett
United States District Judge